AARON D. FORD
  Attorney General
CRAIG A. NEWBY (Bar No. 8591)
  Deputy Solicitor General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
(775) 684-1100 (phone)
(775) 684-1108 (fax)
Email: CNewby@ag.nv.gov

*Attorneys for State Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CALVARY CHAPEL DAYTON VALLEY

           Plaintiff,

  vs.

STEVE SISOLAK, in his official capacity
as Governor of Nevada, et al.,

           Defendants.

Case No. 3:20-cv-00303-RFB-VCF

**RESPONSE TO PLAINTIFFS'
SUPPLEMENT**

      Pursuant to this Court's minute order (ECF No. 33), Defendants Steve Sisolak, in his official capacity as the Governor of Nevada and Aaron D. Ford, in his official capacity as Attorney General of Nevada (collectively "Defendants") hereby submit the following response to Plaintiff Calvary Chapel Dayton Valley's ("Plaintiff" or "Calvary") June 4, 2020 supplement.

      This response is made and based upon all matters of record herein, the Memorandum of Points and Authorities submitted herewith, and upon such oral arguments as the court may allow at the time of hearing of this matter

      DATED this 7th day of June, 2020.

                    AARON D. FORD
                    Attorney General

                    By: /s/ Craig A. Newby
                        CRAIG A. NEWBY (Bar No. 8591)
                        Deputy Solicitor General

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

4

This Court issued the following Order following the filings of Defendants' opposition to the emergency motion for temporary restraining order and preliminary injunction:

5

6

7

> If the Plaintiff is seeking ***alternative or modified relief beyond that requested in its Emergency Motion for Temporary Restraining Order and Preliminary Injunction*** (ECF No. 19). IT IS ORDERED that the Plaintiff must file a supplement to the Motion by June 3, 2020.

8

ECF No. 33 (emphasis added).

9

10

11

12

13

Calvary's "supplement" does not identify "alternative or modified relief."  Instead, following an extension for a medical emergency, Calvary submitted a reply brief that submits *thirty-one* new exhibits, including a declaration that seeks to opine on medical and scientific issues.  This is improper for a reply brief, much less one that seeks emergency injunctive relief.

14

15

16

17

In any event, Calvary's supplement does not change the neutral and generally applicability of the emergency directives to similar mass gatherings.  It is not the place of Calvary, its counsel, or this Court, to second guess the emergency decisions empowered to the State's elected leaders during this crisis.

18

19

Because Calvary has not met its high burden for obtaining injunctive relief, its emergency motion should be denied.

20

**II.    THE DIRECTIVES ARE NEUTRAL AND GENERALLY APPLICABLE**

21

22

23

24

25

26

27

The United States Supreme Court upheld California's temporary restrictions on the number of attendees at religious services.  *See South Bay United Pentecostal Church, et al. v. Newsom, et al.* Case No. 19A1044, 2020 WL 2813056 at *1 (May 29, 2020), attached to the Opposition as **Exhibit B**.  When doing so, the Court noted that California's temporary restrictions "apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time.  *Id.*

28

Here, Nevada has temporary emergency restrictions on comparable secular gatherings, each implemented *prior to* the Supreme Court's recent decision. Public attendance is *prohibited* for all musical performances, live entertainment, concerts, competitions, sporting events, and any events with live performances. **Ex. A** to the Opp. at § 22. In short, religious services are being *treated better* than "lectures, concerts, … spectator sports, and theatrical performances." "Movie showings," the last comparable gathering identified by the Supreme Court, are limited to no more than 50 people, no better than religious services. *Id.* at § 20. Similar restrictions to the lesser of 50 people or 50% occupancy exist for museums, art galleries, zoos, aquariums, trade schools, and technical schools to the lesser of 50 people or 50% occupancy. *Id.* at §§ 30, 32. Good cause exists for the distinction: mass gatherings have a higher risk of COVID-19 transmission than general commerce.

Rather than acknowledge the similarities between the activities identified as comparable by the Supreme Court, Calvary belatedly attempts to do two things in its supplement that are outside the scope of what this Court requested. First, Calvary attempts to argue it should be treated the same as non-restricted gaming licensees or outraged protestors of George Floyd's death. This is mistaken, as Nevada has rational reasons for reopening its most highly-regulated industry and for how to address public unrest.

Second, Calvary attempts to substitute its scientific judgment for Nevada's Chief Medical Officer, through the submission of a medical declaration Calvary could have submitted when filing its request for emergency relief. The Supreme Court recognizes that it is not the place of a court to substitute its policy determinations for those of the elected leaders of Nevada, who are empowered to make difficult, emergency decisions regarding public safety and are subject to democratic accountability if the People ultimately disagree with those decisions. *South Bay*, 2020 WL 2813056 at *1. There is a scientific basis for Nevada's staged efforts at reopening; Calvary is not entitled to substitute its judgment for Nevada's elected leaders.

For the foregoing reasons, this motion should still be denied.

**A.  Nevada Gaming Establishments, as Privileged Licensees, are Subject to Heightened Regulation and Discipline, Justifying Different Treatment than Faith-Based Organizations**

Calvary argues that casinos are being treated better than churches.  Supp. at 2:19-20.  Gaming, as the most highly-regulated business industry within Nevada, are being treated differently than churches.  And for good reason.  The right to hold a non-restricted gaming license is a privilege.  NRS 463.0129(2).  Nevada has "strict regulation" of, inter alia, persons "related to the operation of licensed gaming establishments..."  NRS 463.0129(1)(c).  All places where gaming is conducted are to be "assisted to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State..."  NRS 463.0129(1)(e).  Nevada's legislature described the vital role that gaming plays in our State's economy and to the welfare of its citizens.  NRS 463.0129(1)(a).

Nevada's legislature created the Commission and the GCB.  NRS 463.022, 030.  The Commission and the GCB are to administer the provisions of the Nevada Gaming Control Act to protect the public interest consistent with Nevada policy.  NRS 463.140(1).  The GCB has "full and absolute power" to recommend to the Commission that a finding of suitability be revoked.  NRS 463.1405(3).  This Commission "has full and absolute power and authority" to revoke a finding of suitability.  NRS 463.1405(4).  This "full and absolute power and authority" includes "pursuing disciplinary action to limit, condition, suspend, and/or revoke a license, and/or impose a monetary fine against a licensee in accordance with the Gaming Control Act" for violation of Directive 021.  **Ex. A** to the Opp. at § 35.

Here, to reopen, non-restricted licensees were required to submit detailed reopening plans for review and approval by the Nevada Gaming Control Board.  *See* Health and Safety Policies for Resumption of Gaming Operations – Nonrestricted Licensees (May 27, 2020) at 2, attached hereto as **Exhibit D**.  "Nevada Gaming Control Board Agents may be present to observe some or all of these procedures."  Policy Memorandum – Procedures for Reopening after Temporary Closure due to COVID-19 (Apr. 21, 2020) at 6, attached hereto as **Exhibit E**.  More importantly, the Nevada Gaming Commission has full authority to

enforce the required reopening plans and related health requirements with its existing enforcement personnel.[1]  *See* Directive 021 (**Ex. A** to the Opp.) at § 35.

In contrast, because religion is a fundamental right, not a privilege, its facilities are not subject to heightened regulation and enforcement.  There is no such corresponding regulatory agency for religious-specific facilities that can be immediately repurposed towards enforcing emergency health directives in this context.  This is a good thing and something on which the parties likely agree.

Instead, as described in some detail by the Lyon County Sheriff's joinder, enforcement of Directive 021 is generally left to *local law enforcement*, subject to their prioritization of resources.  As set forth by the Lyon County Sheriff's joinder, enforcement of Directive 021 is prioritized similarly to other complaints received by citizens for other alleged incidents.  Prioritization of limited resources by law enforcement has led to an emphasis in certain Nevada jurisdictions on protests against the killing of George Floyd.  Choosing to reopen a highly regulated industry, that is subject to significant regulatory control that allows for a rapid shutdown if a second COVID-19 outbreak arises, makes sense.  This policy determination warrants deference from a court, as "[o]ur Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'"  *South Bay*, 2020 WL 2813056 at *1 (quoting *Jacobson*, 197 U.S. at 38).

Further, Calvary speculates on the nature of gaming activity today versus what it was prior to COVID-19, relative to its plan for larger church services.  Supp. at 5:1–26.  It ignores the establishment-specific plans each has that has been reviewed and approved by existing regulatory bodies.  It also ignores the lack of time limitation that a religious service may continue.  It also ignores the difference between congregating together with active,

---

[1] It also ignores Lyon County, instead relying on pictures of Fremont Street Experience and a downtown casino.  There, the Carson Plains Casino plans on reopening Saturday, June 6 at 9 a.m.  *See* https://carsonplainscasino.net/ (last accessed June 5, 2020).  In any event, regulatory authority over the pictured establishments lies with the Nevada Gaming Commission and it would be inappropriate for Defendants to comment on whether or what discipline may occur premised on the pictures.

shared communication, versus gaming activities, which now often involve sitting at a socially-distant gaming machine.[2]  Here, where "officials 'undertake [ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *South Bay*, 2020 WL 2813056 at *1 (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).  "Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people.'" *Id.* (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)).

Under these temporary circumstances, Nevada is entitled to deference on its regulated, limited reopening of non-restricted gaming establishments.

## B.  Calvary's Policing Priorities are Misplaced and Not Subject to Court Review

Here, Calvary takes issue with Defendants' approach to protests arising from the tragic killing of George Floyd.  Supp. at 7:1–8:27.  These are spontaneous, peaceful protests arising from the public's outrage at George Floyd's killing by a police officer, as seen on video.  Without dispute, these events have raised serious discussions pertaining to policing and race.  In addition to these peaceful protests, others have attempted to co-opt these peaceful protests with acts of violence.  A Las Vegas Metropolitan Police officer has been seriously wounded.  In Reno, to disperse looting, police were required to use tear gas and other non-lethal methods.

It is in this context that Calvary argues that Defendants' inability to prevent spontaneous protests or to force local law enforcement to arrest all those who violated Directive 021 implies that Defendants are favoring protestors over church services.  Supp. at 9:1–11.  This is ridiculous.  Defendants, as elected leaders, are attempting to address important community issues while also calming a volatile situation.  As noted by the Lyon

---

[2] Defendants have already addressed the difference between mass gatherings most similar to religious gatherings versus commerce, including indoor malls and restaurants, which already have some distancing between groups of people already included.  They will not repeat themselves here.

County Sheriff, local law enforcement has the right to prioritize how it enforces laws. Here, rather than potentially begetting more protest and potential violence by using police officers to engage in mass enforcement of Directive 021, local law enforcement is emphasizing preserving public safety. Making efforts to maintain a safe community is not a restriction on the content of anyone's expression. Further, as noted in Defendants' opposition, there has been no limitation on Calvary's ability to express its beliefs to its members and through the world. Calvary is only limited on the size of any service, rather than the number of services and the ability to communicate in multiple ways.

In short, the purported refusal to arrest protestors does not constitute a violation of Calvary's First Amendment rights.

## C.   Houses of Worship, as a Mass Gathering, Have Higher Risks

Belatedly, Calvary submits a declaration asserting that there is no "scientific or medical reason that a religious service that follows the guidelines issued by the CDC would pose a more significant risk of spreading [COVID-19] than gatherings or interactions at other establishments or institutions." Supp. at 10:6–13. Dr. Flanagan, among his other activities, is a permanent Catholic deacon. *See* **Ex. 44** to the Supp. at p. 14; *see also* Smith, Peter Jesser, *Doctor: Keep Calm and Take Practical, Prayerful Action Amid Coronavirus,* NATIONAL CATHOLIC REGISTER (Mar. 4, 2020), a true and correct copy of which is attached hereto as **Exhibit F.**

Nevada's Chief Medical Officer respectfully disagrees, believing that "[i]n-person worship services pose specific risks for disease transmission." Decl. of Ihsan Azzam, Ph.D, M.D., M.P.H., Chief Medical Officer for Nevada (June 7, 2020) at ¶ 22, attached hereto as **Exhibit G** hereto. As stated previously:

> When it comes to gatherings, the risk is not just based on how many people there are, but rather *how closely they are gathered and how they are interacting with each other.* The risk does not disappear in smaller gatherings. It's the distance and precautions that will make the difference.

*See* Social Distancing (last accessed May 27, 2020);

https://nvhealthresponse.nv.gov/info/event-organizers/ (emphasis added).

In any event, Calvary, its counsel, and this Court are not allowed to substitute their policy judgment for that of elected Nevada officials during this public health emergency. *South Bay*, 2020 WL 2813056 at *1.  Because there is a public health justification for Directive 021 during this emergency, the Court should reject Calvary's efforts to substitute their own policy judgment here.

## III.   *JACOBSON* PROVIDES DISCRETION FOR EXERCISING EMERGENCY POWERS

Calvary attempts to distinguish *Jacobson*, without addressing any of the cases faced by courts throughout the United States affirming its viability to the same issue before this Court. Supp. at 10:18–12:2.  Only in passing does Calvary attempt to rewrite Chief Justice Roberts' opinion in *South Bay* to be more to its liking, by contorting the comparison between comparable secular activities for the proposition that it must "not single out rights or persons for disfavored treatment."  Supp. at 11:19–12:2.  *Jacobson*, as recognized by the Supreme Court in *South Bay*, is the acknowledgement that power to address public health emergencies lies with state elected officials, not litigants and courts, and that there is additional deference to state elected officials while addressing these public health emergencies.  *South Bay*, 2020 WL 2813056 at *1.

Here, on a rational basis, Nevada has treated mass gatherings differently than commerce, including gaming.  Under such circumstances, the motion should be denied.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

IV.    **CONCLUSION**

Following scientific evidence and federal guidelines, Nevada has implemented social distancing to protect Nevadans from COVID-19 to mitigate the risk of exposure and spread. There is a rational basis for treating religious services the same as other mass gatherings and differently than commercial activities on a temporary basis.

Accordingly, the motion should be denied.

Dated: June 7th, 2020.

AARON D. FORD
Attorney General

By: /s/ Craig A. Newby
CRAIG A. NEWBY (Bar No. 8591)
Deputy Solicitor General
State of Nevada
Office of the Attorney General
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on this 7th day of June, 2020, I electronically filed the foregoing document, **RESPONSE TO PLAINTIFF'S SUPPLEMENT,** with the Clerk of the Court by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


/s/ *Kristalei Wolfe*
Kristalei Wolfe
State of Nevada,
Office of the Attorney General

**INDEX OF EXHIBITS**

| EXHIBIT NO. | EXHIBIT DESCRIPTION | NUMBER OF PAGES |
|:---:|---|:---:|
| D | Health and Safety Policies for Resumption of Gaming Operations – Nonrestricted Licensees (May 27, 2020) | 7 |
| E | Policy Memorandum – Procedures for Reopening after Temporary Closure due to COVID-19 (Apr. 21, 2020) | 6 |
| F | Smith, Peter Jesser, *Doctor: Keep Calm and Take Practical, Prayerful Action Amid Coronavirus,* NATIONAL CATHOLIC REGISTER (Mar. 4, 2020) | 6 |
| G | Declaration of Ihsan Azzam, Ph.D, M.D., Chief Medical Officer for Nevada | 5 |